## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

OTIS FRENCH, SR., as Personal
Representative of the Estate of
Otis French, Jr.,

      Plaintiff,

v.

THE CITY OF BAY MINETTE,
by and through Bay Minette
Police Department; BRANDON
THOMPSON; et al,

      Defendants.

CIVIL ACTION NO.:
1:24-cv-00265-JB-B

## DEFENDANTS' BRIEF IN SUPPORT OF AMENDED MOTION TO DISMISS

Come now the Defendants, City of Bay Minette and Officer Brandon Thompson, and submit the following Brief in Support of their Amended Motion to Dismiss:

## I. BACKGROUND

This action arose from a fatal officer-involved shooting that occurred in Baldwin County, Alabama on August 20, 2022. (Doc. 1, ¶ 10, 11, 42). Otis French, Sr. sues as the personal representative of the Estate of Otis French. Named as Defendants are the City of Bay Minette and Bay Minette Police Officer Brandon Thompson. On August 23, 2024, Defendants filed a Motion to Dismiss and Brief in Support of Same. (Docs. 16, 17). Additionally, Defendants filed a Motion for Leave to File Documents in support of their under motion seal. (Doc. 13).

On September 24, 2024, Plaintiff filed his Opposition to Defendants' Motion for Leave and Declaration in Support of Same. (Docs. 28, 28-1). Defendants filed a Reply to that Response on October 1, 2024. (Doc. 29). On October 4, Plaintiff filed his Opposition to Defendants' Motion to Dismiss. (Doc. 30). A Reply brief was filed by the Defendants on October 8, 2024. (Doc. 31). The Court entered an Order setting both pending motions for hearing on November 6, 2024. (Doc. 32).

The parties appeared before the Court on November 6th. The Court ordered that, based upon the filings and oral argument of the parties, the Plaintiff should be given an opportunity to review and analyze the metadata of the video evidence submitted with Defendants' motions before ruling on the motions. Plaintiff was given ninety (90) days to analyze the video and file an Amended Complaint. (Doc. 33). On February 4th, 2025, Plaintiff filed his First Amended Complaint. (Doc. 35).

While the counts in the Amended Complaint vary slightly from the counts in Plaintiff's original Complaint, the Defendants maintain that the Court lacks subject matter jurisdiction over all claims, Officer Brandon Thompson is entitled to qualified immunity as to Plaintiff's claims for illegal stop, illegal seizure, and excessive force, and the Amended Complaint does not state any claim upon which relief can be granted.

## II. **THE FACTS**

### A. **Video Evidence Submitted in Support of Motion to Dismiss**

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, when ruling on a Rule 12(b)(6) or 12(c) motion, a court generally may not consider matters

outside of the pleadings without treating the motion as a motion for summary judgment, and if it treats the motion as one for summary judgment, the court must give reasonable opportunity for the parties to present all evidence that is relevant to the motion. Fed. R. Civ. P. 12(d). One exception to this conversion rule, however, is the incorporation-by-reference doctrine. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2003) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). That exception permits district courts to consider materials outside a complaint at the motion-to-dismiss stage.

Under the incorporation–by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) "the plaintiff refers to certain documents in the complaint,"(2) those documents are "central to the plaintiff's claim," and (3) the documents' contents are undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Evidence is "undisputed" in this context if its authenticity is unchallenged. *Horsley*, 304 F.3d at 1134. The Eleventh Circuit recently examined the doctrine and determined that a Court may consider evidence in deciding a motion for judgment on the pleadings even if the document is not referred to in the complaint where it is central to the plaintiff's claim and undisputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300-01 (11th Cir. 2024)(allowing the District Court to review body cam and dash cam footage at the motion to dismiss stage when combined they "clearly depict" the events that are central to the claims).

Plaintiff's Amended Complaint contains factual allegations that are derived

directly from both the dash camera and body camera footage, citing with precision the seconds that pass from the time Officer Thompson passes French until Thompson makes a U-turn and the seconds that pass until Officer Thompson activates his blue lights. (Doc. 35, ¶¶ 14,15). Plaintiff also discusses Officer Thompson calling in French's license plate number while pulling up behind his vehicle. (Doc. 35, ¶ 18). While the Plaintiff does not explicitly cite to the video footage, Plaintiff's Amended Complaint contains multiple quotes that are taken directly from the video footage. (Doc. 35, ¶¶ 20, 21, 22, 27, 30).

Copies of the footage in their entirety have been previously filed with the Court. The camera footage depicts the events that are relevant and central to the Plaintiff's claims. The area depicted in the footage is well-lit, the footage presents both visual and audio depictions of the events that transpired, and the viewer has a good angle of the events with limited visual obstructions. *See Baker* 67 F.4th at 1277 (holding that body camera footage is admissible under these conditions)[1].

## B. The Combined Factual Allegations

The following recitation of facts is offered based on the body camera and dash camera footage where available. Where the facts alleged by the Plaintiff cannot be supported or refuted based on the camera footage, the Defendant will recite the factual allegations contained in the Plaintiff's Amended Complaint[2].

---

[1] Defendants acknowledge that the body cam video is interrupted for a period of twelve (12) seconds at a point when the decedent charged into and collided with the officer.

[2] The Defendants recite the Complaint's factual allegations because they are the operative facts at the motion-to-dismiss stage. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. For Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003)("Facial

Otis French, Jr. ("French") was a 32-year-old African American man. (Doc. 35, ¶ 7). He lived at 43860 Old Robinson Road in Bay Minette, Alabama. (Doc. 35, ¶10). French suffered from bipolar disorder. (Doc. 35, ¶9).

On August 20, 2022, Officer Thompson was working patrol for the Bay Minette Police Department. At approximately 10:18 a.m., Officer Thompson was driving west on Rain Drive. (Ex. 1, 10:18:57). He then made a left hand turn onto Shedrick Hardy Parkway where he was passed by French who was going in the opposite direction. (Ex. 1, 10:19:02). Officer Thompson turned around in a driveway and headed back north onto Shedrick Hardy Parkway. (Ex. 1, 10:19:20-32). He then made a right hand turn onto Rain Drive and a right hand turn onto Lower Street where he again observed French's vehicle. (Ex. 1, 10:19:32-10:20:00). Officer Thompson pulled behind French and activated his blue lights. (Ex. 1, 10:20:06).

Rather than pull over on the side of the road, French pulled into a driveway. (Ex. 1, 10:20:14). French's right taillight was not working. (Ex. 1, 10:20:12). Officer Thompson exited his vehicle and approached French's vehicle on the passenger side. (Ex. 2, 10:20:55-57). French indicated to Officer Thompson that his passenger side window did not roll down and Officer Thompson opened the passenger door. (Ex. 2, 10:21:00-05). Officer Thompson asked French for his driver's license and informed French that he pulled him over because he failed to use his turn signal. (Ex. 2, 10:21:05-15). He then told him that his taillight was out. (Ex. 2, 10:21:15). Officer Thompson informed French that he wasn't going to give him a ticket but he would

---

attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in decision whether to grant the motion to dismiss."). They are not the actual facts.

need to get it fixed. (Ex. 2, 10:21:15-20). French handed Officer Thompson his license and Officer Thompson asked where French was headed. (Ex. 2, 10:21:24-32). French stated that he was headed home. (Ex. 2, 10:21:24-32). Officer Thompson asked French if he still lived on Old Robinson Road. (Ex. 2, 10:21-24-32). He then asked French who lived at the home where he was parked. (Ex. 2, 10:21:32-36). French stated that he just pulled over there. (Ex. 2, 10:21:32:36). Officer Thompson then stated that he was going to give French a warning and returned to his patrol car. (Ex. 2, 10:21:36-44).

Officer Thompson ran French's license information in his computer. His license was returned as valid. (Ex. 2, 10:23:32).The warning was printed. (Ex. 2, 10:24:12). Officer Thompson exited his patrol car. He approached French's car on the driver's side. (Ex. 2, 10:24:20). Officer Thompson asked French to turn his hazards on so they could step to the back of the vehicle and look at the broken tail light. (Ex. 2, 10:24:23). French voluntarily exited his vehicle. (Ex. 2, 10:24:28). Officer Thompson then asked French if he had any weapons on him. (Ex. 2, 10:24:30). French closed his door and Officer Thompson told French that for Officer Thompson's own protection he was going to pat French down. (Ex. 2, 10:24:34). French told Officer Thompson that he was not comfortable with people touching him. (Ex. 2, 10:24:43). At no point did French indicate to Officer Thompson that he had any type of disability.

Officer Thompson again told French that for officer safety he needed to pat French down. (Ex. 2, 10:24:46). French did not object. Officer Thompson then took

6

his right hand and patted down the left side of French's leg. (Ex. 2, 10:24:54). While patting French's left hip by his shorts pocket, Officer Thompson felt an object in French's left pocket. (Ex. 2, 10:24:54). French's hand was located next to the pocket. (Ex. 2, 10:24:52). Officer Thompson then told French to put his hands behind his back. (Ex. 2, 10:24:55). French then began resisting and saying "nah, nah". (Ex. 1, 10:24:43; Ex, 2, 10:24:56). French grabbed the window of his vehicle. (Ex. 2, 10:25:08). French continued resisting, and Officer Thompson told French that he was going to tase him. (Ex. 2, 10:25:07). French then pushed Officer Thompson to the ground and ran up the driveway. (Ex. 1, 10:24:53-56; Ex. 2, 10:25:10-12). Officer Thompson stood up and held his radio with his left hand while his right hand held his taser. (Ex. 2, 10:25:13). French ran along the side of the house and then turned behind the house and ran in that direction. (Ex. 2, 10:25:16). Officer Thompson ran across the front side of the house to the opposite side of the house. (Ex. 2, 10:25:19). He reported on his radio that he had "one running toward Rain". (Ex. 2, 10:25:20). As Officer Thompson approached the opposite side of the front of the house French is headed toward him. (Ex. 2, 10:25:21). Officer Thompson was holding his taser in his right hand. French then dropped his shoulder and ran into Officer Thompson as Officer Thompson deployed his taser. (Ex. 2, 10:25:28). During the subsequent struggle, Officer Thompson repeatedly told French to stay down. (Ex. 2, 10:25:26-28).

French and Officer Thompson continued to struggle and French gained control of Officer Thompson's taser. French then deployed the taser. (Ex. 3, 10:25:45). Officer

Thompson told French to "put it down" but the two remained physically engaged. (Ex. 3, 10:25:48). Officer Thompson then discharged his weapon, striking French. (Ex. 3, 10:25:55). Officer Thompson immediately slid back from French. (Ex. 3, 10:25:56 – 26:01). Even after French has been struck, French continued to deploy the taser. (Ex. 3, 10:26:01). Officer Thompson immediately radioed "shots fired, one down". (Ex. 3, 10:26:10). He then called for EMS. (Ex. 3, 10:26:33). As he was calling, another officer arrived at the scene. (Ex. 3, 10:26:36). Officer Thompson told the officer that they needed to get French some help. (Ex. 3, 10:27:14). French was then secured and Officer Thompson went to his patrol car to get his medical bag. (Ex. 3, 10:27:40). When another officer arrived, Officer Thompson told him to get EMS. (Ex. 3, 10:28:07). Officer Thompson then attempted to render aid to French. (Ex. 3, 10:28:50 - 10:30:20). Officer Thompson performed CPR on French until medical personnel arrived. (Ex. 3, 10:31:20-10:34:12). French was transported to North Baldwin Infirmary and was pronounced dead.

## III.   ANALYSIS OF THE CLAIMS

The Complaint contains ten numbered counts. (Doc. 35). Counts One through Five assert § 1983 claims against Officer Thompson in his individual capacity. (Doc. 35, ¶¶ 68- 153). Count Six asserts a Civil Rights Violation under 42 U.S.C. § 1983 against the City. (Doc. 35, ¶¶ 154 – 179). Counts Seven and Eight assert claims against the City under the Americans with Disabilities Act and the Rehabilitation Act. (Doc. 35, ¶¶ 180 – 199). Counts Nine and Ten assert state law wrongful death claims against Officer Thompson and the City. (Doc. 1, ¶¶ 200-211). The Defendants

8

will first address the claims asserted under federal law against the Defendants and will then address the state law claims.

### A. The Motion-to-Dismiss Standard

A defendant may assert by motion the defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). According to Rule 8, "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To decide whether a complaint survives a motion to dismiss, we use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. The Plaintiff "bear[s] the burden of setting forth facts that entitle [him] to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019). Taking the facts as alleged in the Amended Complaint, combined with the facts as shown in the body and dash camera video, the Plaintiff has failed to state a claim against Officer Thompson or the City.

### B. Federal Claims Asserted Against Officer Thompson

The complaint does not state a § 1983 claim against Officer Thompson upon which relief can be granted. Count One asserts a § 1983 claim for illegal stop under the Fourth Amendment. (Doc. 35, ¶¶ 68 – 80). Count Two asserts a § 1983 claim for "Illegal Seizure from the Vehicle" under the Fourth Amendment. (Doc. 35, ¶¶ 81 – 95). Count Three asserts a § 1983 claim for "Illegal Seizure – Pat Down" under the Fourth Amendment. (Doc. 35, ¶¶ 96 – 111). Count Four asserts a § 1983 claim for "Illegal Seizure and Arrest – Handcuffing" under the Fourth Amendment. (Doc. 35, ¶¶ 112 – 126). Count Five asserts a § 1983 claim for "Excessive Force – Deadly Force" under the Fourth Amendment. (Doc. 35, ¶¶ 127 – 153).

Officer Thompson is entitled to qualified immunity against all § 1983 claims because the complaint does not plausibly demonstrate that he violated a clearly established constitutional right. Qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A governmental official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 574 U.S. 13, 16 (2014). "To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019). Here, it is clear that Officer Thompson was acting in his discretionary authority when he initiated

the traffic stop at issue and subsequently attempted to detain French, and ultimately used force against him. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1268 (11th Cir. 2010) (stating that police investigations and arrests usually are considered discretionary functions).

Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply. *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). To overcome qualified immunity, the Plaintiff must make two showings. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). The plaintiff must show "(1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). These two components may be analyzed in any order. *Manners v. Cannella*, 891 F.3d 959, 968 (11th Cir. 2018).

Defendants have met their burden of establishing qualified immunity and Plaintiff has not and cannot overcome qualified immunity, as more fully explained below.

### 1. The Plaintiff's Claim for Illegal Stop under 42 U.S.C. § 1983 is due to be dismissed.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop "constitute[s] a 'seizure' within the meaning of the Fourth Amendment". *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Under the Fourth Amendment, "law enforcement may stop a vehicle when there is

probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles". *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred, no matter how minor a violation it is. *Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Hence, whether probable cause exists is viewed from the standpoint of a reasonable police officer. *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003).

Moreover, in the context of the Fourth Amendment, when a defendant raises the defense of qualified immunity, the standard is not actual probable cause, but "arguable" probable cause. *Madiwale v. Savaiko*, 394 F.3d 1321, 1324 (11th Cir. 1997). Under the qualified immunity inquiry, the issue for determining whether the Plaintiff has alleged a Fourth Amendment violation is whether an objectively reasonable officer in the same circumstances and possessing the same information as the defendant *could have believed* that probable cause or reasonable suspicion existed. *Crosby v. Monroe County*, 394 F.3d 1328, 1332-33 (11th Cir. 2004).

Plaintiff bases his contention that the stop was illegal on the fact that prior to Thompson activating his emergency lights, French had not make any left turns that

12

would have required use of his left turn signal. (Doc. 35, ¶ 73). As seen in the body cam and dash cam footage, Officer Thompson observed French driving on Shedrick Hardy Parkway. French then made a right-hand turn onto Rain Drive. Officer Thompson initiated a traffic stop based on French's failure to use his signal while making the turn. Dash cam footage confirms that French's right passenger side taillight was out. A reasonable officer in the same circumstances and possessing that same knowledge could have believed that he had probable cause to initiate a traffic stop. Plaintiff's claim for illegal stop under 42 U.S.C. § 1983 due to be dismissed.

### 2. The Plaintiff's claims for Illegal Seizure under 42 U.S.C. § 1983 are due to be dismissed.

Similarly, the claims for illegal seizure under 42 U.S.C. § 1983 should be dismissed. Plaintiff alleges that Officer Thompson had no legal basis for requiring French to exit his vehicle. (Doc. 35, ¶84). Plaintiff also alleges that French did not voluntarily agree to exit his vehicle. (Doc. 35, ¶ 89). Further, Plaintiff alleges that after French was compelled to exit his vehicle, Officer Thompson had no legal basis for subjecting French to a pat down or search of his person. (Doc. 35, ¶ 99). Finally, Plaintiff alleges that Officer Thompson's attempt to handcuff and arrest French was unlawful and without legal basis. (Doc. 35, ¶ 114).

The camera footage submitted in support of Defendant's Motion to Dismiss establishes that French voluntarily exited his vehicle. Defendants will address the request for French to exit his vehicle, the pat down and the handcuffing of French.

*Terry v. Ohio,* 392 U.S. 124 (1968) established that, in an investigatory stop based on reasonably grounded suspicion of criminal activity, the police must be positioned to act instantly if they have reasonable cause to suspect that the persons temporarily detained are armed and dangerous. Because a limited search of outer clothing for weapons serves to protect both the officer and the public, a patdown is constitutional. *Id.* at 23-24. Traffic stops, which "resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*," *Berkemer v. McCarty*, 468 U.S. 420, 439, n. 29 (1984), are "especially fraught with danger to police officers," *Michigan v. Long*, 463 U.S. 1032, 1047 (1983), who may minimize the risk of harm by exercising "unquestioned command of the situation." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). In connection with a *Terry* stop, an officer may conduct a pat-down search if he has reason to believe that his own safety or the safety of others is at risk. *Terry*, 392 U.S. at 27.

In *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) the Court examined *Terry's* application in a traffic-stop setting and held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendmen[t]" because the government's "legitimate and weighty" interest in officer safety outweighs the "*de minimus*" additional intrusion of requiring a driver, already stopped, to exit the vehicle. Further, during an investigatory stop, an officer can handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305-1306 (11th Cir. 2006). If

an officer reasonably believes that an investigative stop can be carried out only in such a manner, it is not a court's place to substitute its judgement for that of the officer. *United States v. Sharpe*, 470 U.S. 675 at 686-87 (1985).

Here, it was lawful for Officer Thompson to stop the vehicle and detain its occupant for the violation of Ala. Code § 32-5A-133, which requires drivers to give a signal of their intention to turn left or right during not less than the last 100 feet traveled by the vehicle before turning. Officer Thompson's mission was to address the traffic violation that warranted the stop and to attend to related safety concerns. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015). While carrying out his mission, Office Thompson would have been mindful of the safety risk that officers face when conducting traffic stops. Officer Thompson exercised command of the seizure. He made the "ordinary inquiries incident to [the traffic] stop." *Rodriguez*, 575 U.S. at 355. Officer Thompson asked French for his driver's license and asked if he still lived at the same address noted on the license. He asked him if he was aware that his turn signal was not working. In carrying out his mission, Officer Thompson asked French to step out of his vehicle in order to show him the taillight that was not functioning properly. This request was proper as set out by the Court in *Mimms*. French exited the vehicle, and Officer Thompson then informed French that, for his own safety, he wanted to pat French down to check for weapons. See *United States v. Bishop*, 940 F.3d 1242, 1248 (11th Cir. 2019)(holding that an officer is permitted to conduct a limited search of an occupants outer clothing for weapons where a prudent man in the circumstances would be

warranted in the belief that his safety was in danger). While French stated that he didn't like to be touched, he consented to the pat down. French raised his hands and turned around toward the car. (Ex. 2, 10:24:35 – 10:24:48).   As Officer Thompson was conducting the pat down, he felt something in French's pocket. He then told French to place his hands behind his back and attempted to place French in handcuffs. Again, this was for officer safety. *See United States v. Kapperman*, 764 F.2d 786, 790 n. 4 (11th Cir. 1985) (police may take reasonable action, based on the circumstances, to protect themselves or to maintain the status quo). As Officer Thompson tried to place French in handcuffs, French escalated the situation by resisting detention and ultimately pushed Officer Thompson to the ground.

What began as a pat down for officer safety ultimately morphed into a situation where, based on French's actions, use of force was necessary. All steps taken by Officer Thompson were in an effort to ensure his own safety. There was no violation of French's Fourth Amendment rights and the claim is due to be dismissed.

### 3. The Plaintiff's Claim for Excessive Force Under 42 U.S.C. § 1983 is due to be dismissed.

Officer Thompson is entitled to qualified immunity because the Amended Complaint does not depict a use of force that violated a clearly established Fourth Amendment right.

In excessive force cases, the first qualified immunity inquiry – *i.e.*, whether a plaintiff's constitutional rights were violated – is governed by the Fourth

16

Amendment's objective reasonableness standard. *Hadley v. Gutierrez*, 526 F.3d 1234, 1329 (11th Cir. 2008). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight". *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In the context of deadly force, the Supreme Court has set out examples of factors that justify the use of such force:

> Where the officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon...deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). The Supreme Court has cautioned, however, that *Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute "deadly force". *Scott v. Harris*, 550 U.S. 372, 382 (2007).

Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, we must "slosh our way through the factbound morass of reasonableness." *Scott*, 550 U.S. at 383. Therefore, determining whether the use of a particular type of force in a particular situation is "reasonable" in the constitutional sense requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion." *Id.* Courts

must examine the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S at 396.

In examining whether an officer's use of deadly force is reasonable, we recognize that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.* The Court is loathe to second-guess the decisions made by police officers in the field. *Vaughn v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003). The Supreme Court has also noted that providing a warning to a fleeing suspect weighs in favor of the reasonableness of using deadly force. *Garner*, 471 U.S. at 11-12.

Video evidence shows that Officer Thompson initially stopped French for failing to use his traffic signal while making a turn. Officer Thompson intended to give French a warning. Officer Thompson asked French to exit his vehicle so that Officer Thompson could show him the light that was out. When French stepped out of the vehicle, Officer Thompson requested to pat him down for officer safety. As Officer Thompson proceeded to pat French down, he felt a foreign object in French's pocket. Officer Thompson then attempted to place French in handcuffs. French began resisting.

In his Complaint, Plaintiff alleges that French, fearing Thompson's aggressive force, illegal stop and seizure, and display of handcuffs, distanced

himself and ran away from Thompson. (Doc. 35, ¶ 38). Plaintiff further alleges that French ducked and attempted to run past and away from Thompson, but Thompson took out his taser and discharged it against French. (Doc. 35, ¶ 41). Plaintiff also alleges that after French ran around the side of the house, Officer Thompson stepped in French's path, tased, and tackled French, causing French to hit his head on a nearby picnic table. (Doc. 35, ¶ 43).

Plaintiff's version of the facts is disproved by video footage. French attempted, through physical acts, to compromise the pat down and resisted. Ultimately he pushed Officer Thompson to the ground. Officer Thompson then attempted to chase French on foot. When French ducked behind the back of the house, Officer Thompson decided to run across the front of the house. It was when Officer Thompson got to the front of the other side of the house that Officer Thompson saw French. Officer Thompson pulled his taser when French began charging at him. The two collided and in that shuffle French forcibly took Officer Thompson's taser.  There was no use of the taser or the firearm until French had pushed Officer Thompson to the ground, French had fled from the immediate area, and ultimately charged at Officer Thompson.

While based upon the clear video evidence, Officer Thompson's use of deadly for was justified, even if Officer Thompson's use of deadly force was excessive under the Fourth Amendment, Officer Thompson is alternatively entitled to qualified immunity because, given the circumstances, he violated no clearly established right. The purpose of the qualified immunity doctrine is to give meaning to the proposition

that government officials are not required to err on the side of caution when it comes to avoiding constitutional violations. *Crosby v. Monroe*, 394 F.3d 1238, 1334 (11th Cir. 2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendants, in their individual capacities, are entitled to qualified immunity unless their "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco,* 283 F.3d 1275, 1282 (11th Cir. 2002).

Pointing to law pre-existing the events in the pertinent case, Plaintiff has the burden of demonstrating that the Defendants–at the pertinent time and given the specific circumstances of this case – had fair notice that their conduct would violate clear federal law. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). To demonstrate that the law at the time clearly established that the Defendants' conduct would violate the Constitution, Plaintiff might point to either (1) earlier case law from the Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with "obvious clarity" to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct. *See Marsh v. Butler County Ala.*, 268 F.3d 1014, 1031-33 & nn. 9-10 (11th Cir. 2001). And "where the applicable legal standard is a highly general

one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law." *Thomas v. Roberts*, 323 F.3d 950, 954 (11th Cir. 2003). Here, there is no controlling and materially similar case law that would establish that Officer Thompson's use of deadly force was clearly unlawful after being taken to the ground by French, French wresting Officer Thompson's taser from him, and French using the taser against Officer Thompson.

### C.    Plaintiff's Federal Law Claims Against the City

#### 1.    42 U.S.C. § 1983 Claim Against the City

In Count VI of his Amended Complaint, Plaintiff makes a claim against the City alleging that the City's custom and practice included the absence of any administrative reviews of its constitutional obligations to its citizens. (Doc. 35, ¶ 156). Plaintiff further alleges that the City failed to supervise, train and/or provide policies or procedures to its officers regarding lawful stops, lawful seizures, lawful force, and the use of force and/or interactions with individuals with mental illness. (Doc. 35, ¶¶ 157-160).  Plaintiff also alleges that the City engages in a pattern or practice of deliberate indifference to the risks of constitutional violations and need for policies and procedures, supervision, and/or training to avoid and/or mitigate unconstitutional policing. (Doc. 35, ¶ 161).

A municipality may be held liable for the actions of its law enforcement officers only when the officer's execution of official policy (or custom) is the moving

21

force of a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1987). Thus, to establish municipal liability, a plaintiff must show that (1) his constitutional rights were violated, (2) the municipality had a policy (or custom) that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289-90 (11th Cir. 2004). Plaintiff's claim against the City under *Monell* is due to be dismissed for two reasons. First, as set out herein, there has been no constitutional violation. Where there is no constitutional violation, the Plaintiff's municipal liability claim against the City fails as a matter of law. *See Knight v. ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017). Second, the Plaintiff has not identified a policy or custom that constituted deliberate indifference to Plaintiff's constitutional rights.

A plaintiff can establish a policy or custom by identifying a deprivation of constitutional rights "by either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law". *Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). But in any case, the policy or custom must have been the "moving force of the constitutional violation." *Young v. City of Augusta*, 59 F.3d 1160, 1171 (11th Cir. 1995). Plaintiff has not identified an express policy that led to the deprivation of Plaintiff's rights. Plaintiff makes a blanket statement that the City failed to supervise, train, and/or provide policies or procedures to its officers regarding lawful stops, lawful seizures, lawful

force, use of force, and interactions with individuals with mental illness. The allegations made by the Plaintiff are insufficient and conclusory. *Jennings v. Stewart*, 461 F.Supp.3d 1198, 1201 (N.D. Fla. 2020) (holding that where plaintiff alleged that the Sheriff's failure to implement adequate hiring, supervisory, and internal procedures – as well as his failure to supervise, train and investigate his employees - represented an improper or absent policy, there were not enough facts alleged to raise a right to relief above the speculative level) *Cf. Ross v. Correction Health Services-Jackson Health Services*, 2023 WL 2475443 (S.D. Fla. 2023) (broad conclusory allegations must be supported by factual assertions supporting the claims asserted). Similarly, the Plaintiff has presented no evidence of a widespread issue within the department and has not alleged any specific ordinance, rule or regulation that the City violated. *See McCants v. City of Mobile*, 752 Fed. Appx. 744, 748 (11th Cir. 2018).   Plaintiff's *Monell* claim is due to be dismissed.

> **2.    Plaintiff's Claims against the City under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act are due to be dismissed.**

In Count VII, Plaintiff alleges that the Defendants "knew or should have known" of French's disability and "failed to make a reasonable accommodation for OTIS JR.'s mental health diagnosis." (Doc. 35, ¶¶ 182, 190). In Count VIII, Plaintiff alleges that "the same conduct of Defendant CITY that constituted an ADA violation also constituted failure to reasonably accommodate OTIS JR.'s disability under Section 504." (Doc. 35, ¶ 198). Plaintiff's conclusion that the Defendants "knew or should have known" of the Plaintiff's alleged disability, without adequate

factual support, is not sufficient to survive dismissal. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1271 (11th Cir. 2004).

Even if Plaintiff's claim was sufficient, Plaintiff is unable to prove a prima facie claim for failure to accommodate. To state a prima facie claim for failure to accommodate under the ADA, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). The same standards govern discrimination claims brought under the Rehabilitation Act as those brought under the ADA and cases decided under one act provide precedent for cases decided under the other. *Cash v. Smith*, 231 F.3d 1301, 1305 n. 2 (11th Cir. 2000). Here, Plaintiff has not established that French was disabled or that he requested an accommodation.

Under the ADA, an individual is "disabled" if he:

   a) Has a physical or mental impairment that substantially limits on or more of the major life activities of such individual;

   b) Has a record of such impairment; or

   c) Is regarded as having such an impairment.

42 U.S.C. § 12102(2).

Bipolar disorder has been held to constitute a mental impairment. *Price v. Facility Management Group*, 403 F.Supp.2d 1246, 1254 (N.D. Ga. 2005). Merely having an impairment, however, does not render an individual "disabled" under § 12102(2)(A). *See Collado v. United Postal Service Co.*, 419 F.3d 1143, 1155 (11th Cir. 2005)(emphasizing that impairment must substantially limit a major life activity to

rise to the level of a disability under § 12102(2)(A)). Plaintiff must also show that his bipolar disorder substantially limits one or more of his major life activities. *Id.* That determination does not follow automatically from plaintiff's diagnosis of bipolar disorder; instead, it must be made on a case-by-case basis. Here, Plaintiff has pled no facts that establish that French's bipolar disorder substantially limited one or more of his major life activities.

Additionally, the Plaintiff has not specifically identified a reasonable accommodation that was requested by French. *See Bagwell v. Morgan Cty. Comm'n,* 676 Fed. Appx. 863, 866 (11th Cir. 2017) (holding that the employer's duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation). Video evidence establishes that Plaintiff stated only that he wasn't comfortable with people touching him. (Ex. 2; 10:24:43). The plaintiff's claims under the ADA and RA are due to be dismissed.

## D. State Law Claim Asserted Against the Defendants

The Plaintiff has asserted a state law claim for wrongful death against Officer Thompson and the City of Bay Minette. (Doc. 35, ¶¶ 200-211). Officer Thompson is entitled to statutory peace officer immunity as to the state law claim under Alabama Code § 6-5-338:

> Every peace officer and tactical medic, except constables, who is employed or appointed pursuant to the Constitution or statues of this state, whether appointed or employed as a peace officer or tactical medic by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws to appoint or employ police officers or other peace officers or tactical medics, and

whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

As a law enforcement officer, Officer Thompson qualifies as a peace officer for purposes of section 6-5-338[3]. *See Ex parte City of Homewood*, 231 So.3d 1082, 1087 (Ala. 2017)("it is undisputed that Officer Clinton and Officer Davis were employed as law-enforcement officers by Homewood; therefore, they are 'peace officers' for the purposes of §6-5-338(a), Ala. Code 1975"). "The restatement of State-agent immunity as set out by [the Alabama Supreme Court] in *Ex parte Cranman*, now governs the determination of whether a [peace] officer is entitled to immunity under § 6-5-338(a), Ala. Code 1975." *Downing v. City of Dothan*, 50 So.3d 16, 19 (Ala. 2010)(referring to *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000)). In pertinent part, the *Cranman* standard states:

"A state agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based on the agent...

(4)    Exercising judgment in the enforcement of the criminal laws of the state, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace

---

[3] Plaintiff admits that Brandon Thompson is a sworn law enforcement officer employed by the Bay Minette Police Department. (Doc. 35, ¶¶4,5).

officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975...

Notwithstanding anything to contrary in the foregoing statement of the rule, a state agent shall not be immune from civil liability in his or her personal capacity:

(1)    When the Constitution or laws of the United States, or the Constitution of this state, or laws, rules, or regulations of this state enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2)    When the state agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

*Ex parte Cranman*, 792 So.2d at 405 (Category 4 modified by *Hollis v. City of Brighton*, 950 So.2d 300, 309 (Ala. 2006)).

A state agent asserting state-agent immunity bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the state agent to immunity. *Ex parte Estate of Reynolds*, 946 So.2d 450, 452 (Ala. 2006). Should the state agent make such a showing, the burden then shifts to the plaintiff to show that one of the two exceptions to state-agent immunity recognized in *Cranman* are applicable. *Ex parte Kennedy*, 992 So.2d 1276, 1282-83 (Ala. 2008). To establish that the plaintiff's claims arose from a function that would entitle officers to state-agent immunity, the defendants are required to establish (1) that the officer is a peace officer (2) performing law-enforcement duties at the time of the incident and (3) exercising judgment and discretion. *Ex parte City of Homewood*,

27

231 So.3d 1082, 1087 (Ala. 2017).

An officer who makes a traffic stop in an attempt to enforce the traffic laws of the state is acting within the line and scope of his law enforcement duties. *Ex parte Thomas*, No. SC-2022-0525, 2023 WL 2337147 at *3-4 (Ala. March 3, 2023)(overruled on other grounds) (citing *Ex parte Kennedy*, 922 So.2d 1276, 1283 (Ala. 2008)). Police investigations and arrests usually are considered discretionary functions within the line and scope of law enforcement duties for the purposes of discretionary-function immunity. *Grider v. City of Auburn*, 618 F.3d 1240, 1268 (11th Cir. 2010). Use-of-force decisions are discretionary functions. *See Thurmond v. City of Huntsville*, 904 So.2d 314, 326 (Ala. Civ. App. 2004)("we conclude that the…officers were engaged in the exercise of a discretionary function…when they made the judgment call on how much force to use and under what circumstances to use it."). Accordingly, Officer Thompson is entitled to invoke peace officer immunity against all state law claims.

Should the state agent make such a showing the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable. The exception being argued here is that "the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." 946 So.2d at 452. One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed "'to discharge duties pursuant to a detailed rules or regulations, such as those stated on a checklist.'" *Giambrone v. Douglas* 874

28

So.2d 1046, 1052 (Ala. 2003) (quoting *ex parte Butts*, 775 So.2d at 178). Plaintiff cannot meet this burden.

As evidenced by the body cam footage that has been presented, Officer Thompson's actions were taken in response to French's actions. Officer Thompson attempted to detain French and French assaulted Officer Thompson then fled on foot around the side of a house. Thompson attempted to catch French by running across the front of the house then toward the back of the house. When Thompson turned toward the back of the house, French charged at Officer Thompson. Officer Thompson attempted to tase French but French had no physical response to the taser and engaged in a physical fight with Officer Thompson and took possession of Officer Thompson's taser which he then turned on Officer Thompson. Officer Thompson was in a position of imminent life-threatening peril. A police officer must not be required to ponder and ruminate over decisions that should be made in a split second. *Thurmond v. City of Huntsville*, 904 So.2d 314, 320 (Ala. Civ. App. 2004). After giving French fair warning, Officer Thompson discharged his weapon which ultimately resulted in French's death. He did not act willfully, maliciously, fraudulently, in bad faith, or beyond his authority. Further, there is no allegation that Officer Thompson failed to discharge any duty pursuant to a detailed rule or regulation. Officer Thompson is entitled to immunity. Because Officer Thompson is entitled to immunity, the City is also entitled to immunity. *Ex parte City of Gadsden*, 781 So.2d 936, 940 (Ala. 2000) ("The plain language of §6-5-338(b), Ala. Code 1975, extends that discretionary function immunity to the City."). Plaintiff's

claims for wrongful death are due to be dismissed.

## IV. Conclusion

For the foregoing reasons, the Defendants ask the Court to dismiss all claims against them with prejudice for failure to state a claim. Defendant Brandon Thompson further asks the Court to grant him qualified immunity as to all claims asserted pursuant to 42 U.S.C. § 1983 and to grant him State-agent immunity as to all state law claims.

WHEREFORE, in light of the foregoing, the Defendants respectfully move for dismissal of the claims asserted against them.

<div style="margin-left:40%">

**s/ Melissa P. Hunter**
ANDREW J. RUTENS  (RUTEA8549)
arutens@gallowayllp.com
MELISSA P. HUNTER  (HUNTM3367)
mhunter@gallowayllp.com
LAWRENCE M. WETTERMARK
(WETTL2146)
lwettermark@gallowayllp.com
GALLOWAY, WETTERMARK
    & RUTENS, LLP
Post Office Box 16629
Mobile, Alabama  36616-0629
PH: (251)476-4493  -  FX: (251)479-5566
*Attorneys for The City of Bay Minette and Officer Brandon Thompson*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Je Yon Jung, Esq.

**s/ Melissa P. Hunter**