IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OTIS FRENCH, SR., as Personal Representative of the Estate of Otis French, Jr., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF BAY MINETTE, by and through Bay Minette Police Department; BRANDON THOMPSON; et al, <br><br> Defendants. | CIVIL ACTION NO.: 1:24-cv-00265-JB-B |

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

On February 4, 2025, Plaintiff filed his First Amended Complaint. (Doc. 35). The Amended Complaint alleges that Officer Brandon Thompson, by and through the Bay Minette Police Department, engaged in multiple violations of federal and state law. Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. (Docs. 38, 39) and the Plaintiff has filed an Opposition to that Motion. (Doc. 45). As set forth more particularly herein, Officer Brandon Thompson is entitled to qualified immunity as to the Plaintiff's claims for illegal stop, illegal seizure, and excessive force, and he is further entitled to State-agent immunity as to the wrongful death claim. Additionally, the Plaintiff has failed to establish any cognizable claim against the City of Bay Minette.

I.    The video footage submitted to the Court is admissible and supports the Defendants' Amended Motion to Dismiss.

As stated by the Plaintiff in his Opposition, after the Court's hearing on November 6, 2024, the Defendants provided the Plaintiff with all metadata in their possession related to the body cam and dash cam footage marked as exhibits to Defendants' original Motion. On January 1, 2025, Plaintiff's counsel emailed defense counsel and stated that the data had been extracted from the zip file but she was still experiencing issues with the TOC (table of contents) and full audit lot. (Ex. 1, 1/1/25 Email). Counsel asked for contact information for Defendants' IT professional. (Ex. 1, 1/1/25 Email). On January 2, 2025, defense counsel provided Plaintiff's counsel with the contact's email address and telephone number. (Ex. 2, 1/2/25 Email). Defense counsel received no additional correspondence regarding Plaintiff's review of the footage. Plaintiff now contends that additional forensic review of the footage is necessary.

Plaintiff further alleges that the footage should not be considered because it is "disputed" in that Plaintiff challenges the authenticity of the video and portions of the video are missing. The Defendant concedes that a portion of the body cam footage is missing, however, the video that the Defendant is asking the Court to consider is not disputed. In support of his position that the footage should not be considered, Plaintiff cites *Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988 (9th Cir. 2018). In that case, the Court considered whether a 2014 EMA Report was susceptible to judicial notice. *Id.* at 1001. The Court determined that statements made within the Report lacked supporting factual background and the district court abused its discretion in taking judicial notice of the Report. *Id.* This Court, however,

*can* accept facts clearly depicted in a video recording even if there would otherwise be a genuine issue about the existence of those facts. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007)(emphasis added). Defendant would further adopt and incorporate the statement of facts as set out in its Amended Motion to Dismiss. (Docs. 38, 39).

Finally, the Plaintiff argues that if the Court is inclined to use available portions of the video, the video actually supports the Plaintiff's allegations rather than Defendants.' (Doc. 45, p. 5). In support of this contention, the Plaintiff asserts there is no evidence that French failed to use a "right-hand" turn signal. As shown in the video, at approximately 10:18 a.m., Officer Thompson was driving west on Shedrick Hardy Parkway when he was passed by French, who was traveling in the opposite direction. (Doc. 39 - Ex. 1, 10:19:02). It is undisputed that after passing Thompson, French made a right-hand turn onto Rain Drive and another right-hand turn onto Lower Street. It is clear in the dash cam video that the entire right taillight assembly was not working. (Doc. 39 - Ex. 1, 10:20:12). While the Plaintiff cites *Shaw v. City of Selma*, 884 F.3d 1093, 1098 n. 1 (11th Cir. 2018) for the proposition that where a recording does not clearly depict an event or action the Plaintiff's version is to be accepted, the recording here clearly depicts the inoperative taillight.

Plaintiff contends that he should be entitled to present his full case after discovery because French, the witness most likely to contradict Officer Thompson's story, is dead and unable to testify. In support of his position, Plaintiff cites to one case holding that a Court cannot simply accept what may be a self-serving account

by a police officer. *Flythe v. Dist. of Columbia*, 791 F.3d 13, 19 (D.C. Cir. 2015). Here, the Defendants are not asking the Court to consider a self-serving statement from Officer Thompson. The Defendants are asking the Court to grant qualified immunity to Officer Thompson based on video evidence of the incident made the basis of Plaintiff's Amended Complaint. In the second case cited by the Plaintiff, *Estate of Todashev by Shibly v. United States*, 815 Fed. Appx. 446 (11th Cir. 2020), Ibragim Todashev, a person of interest in the Boston Marathon bombing, was shot by an FBI agent during an interview conducted by the FBI and Massachusetts State Troopers. The reports from the scene were inconsistent and video recordings were going on and off during the interview. The Court determined that the Plaintiff was entitled to conduct discovery prior to responding to a motion for summary judgment. *Id.* at 448.

The facts in this matter are very different. There are no inconsistencies here. The video footage submitted to the Court contains sufficient evidence to allow the Court to correctly determine that Officer Thompson is entitled to qualified immunity.

II.    Defendant Brandon Thompson is entitled to qualified immunity.

    A. The Plaintiff's Claim for Illegal Stop under 42 U.S.C. § 1983 is due to be dismissed as Plaintiff has not established a violation of French's constitutional rights.

Law enforcement may stop a vehicle where there is probable cause to believe the driver is violating any traffic or equipment regulations. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). In the context of the Fourth Amendment, when a defendant raises the defense of qualified immunity, the standard is not actual

probable cause, but "arguable" probable cause. *Madiwale v. Savaiko*, 394 F.3d 1321, 1423 (11th Cir. 1997). The Court must consider whether an objectively reasonable officer in the same circumstances and possessing the same information as the defendant *could have believed* that probable cause or reasonable suspicion existed. *Crosby v. Monroe County*, 394 F.3d 1328, 1332-33 (11th Cir. 2004). As set out in Defendants' Amended Motion, Officer Thompson passed French on Shedrick Hardy Parkway. He would have then been able to see in his rearview mirror French make his right turn onto Rain Drive. When French failed to use his right turn signal, Officer Thompson turned around to initiate a traffic stop. As can be seen on the dash cam video, French's right taillight is out.

Plaintiff argues that because the dash cam footage itself does not depict French turning right onto Rain Drive, Officer Thompson did not see French make the right hand turn, and further argues that a French's non-functioning taillight may not be an indicator that his turn signal was faulty. What is established by the video footage is that Officer Thompson passed the vehicle driven by French and turned his vehicle around. After French passes Thompson and before French stops his vehicle, he makes two right hand turns. Dash cam footage shows that French's right taillight is completely non-functional. Officer Thompson then informs French that he was pulled over because he failed to use a turn signal "back there." (Doc. 39 - Ex. 2, 10:21:08) It is possible that Officer Thompson observed a non-functioning taillight and mistook it for a non-functioning turn signal, but that doesn't negate the video evidence that French's entire passenger side taillight wasn't working. The

Plaintiff also tries to create suspicion in Officer Thompson's actions because he said the light on the left side wasn't working when the dash cam shows it was the right side rear light when you are looking at the French vehicle from the rear that was completely out. However, when you view the body camera footage when Officer Thompson makes the statement, it is important to note that Officer Thompson was standing by the front door of the vehicle, and while it would be clear if Officer Thompson said "passenger side" or "driver side," when standing at the front of the vehicle, it is the left side light that is out. The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable even when it appears, in hindsight, that he might have made a mistake. The concept of arguable probable cause allows for the possibility that an officer might "reasonably but mistakenly conclude that probable cause is present." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). As shown in the video, the evidence supports the factual basis for the stop and Officer Thompson is entitled to qualified immunity.

    B.  **The Plaintiff's Claims for Illegal Stop and Seizure under 42 U.S.C. § 1983 are due to be dismissed as Plaintiff has not established a violation of French's constitutional rights.**

A routine traffic stop is more like a brief stop under *Terry v. Ohio* than an arrest. Its tolerable duration is determined by the seizure's "mission," which is to address the traffic violation that warranted the stop and attend to related safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Authority for the seizure ends when tasks tied to the traffic infraction are – or reasonably should have been – completed. *Id.*

Officer Thompson was attempting to address the traffic violation that occurred and attend to related safety concerns. He obtained necessary information from French, returned to his vehicle, printed a citation and returned to French's vehicle. He then asked French to step outside his vehicle in order to show him that the taillight was not functioning properly, the safety concern that was the basis for the stop. Plaintiff contends that French did not voluntarily exit the vehicle. In determining whether a "reasonable person" would feel free to terminate the encounter, courts consider several factors: whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questions; the number of police officers present; the display of weapons; any physical touching of the suspect, and the tone of voice of the police. *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006).

When the traffic stop was initiated, French pulled off the street into a private driveway. As can be seen in the footage, Officer Thompson made no attempt to block French's car in. (Doc. 39 - Ex. 2, 10:21:48). French was a thirty-two year old man and appeared to be of average intelligence. Approximately three and one half minutes after being pulled over French was asked to exit the vehicle and look at the taillight. Only one officer was present. Officer Thompson was polite and cordial toward French. He had not touched French prior to asking him to step out of the vehicle.

After French stepped out of the vehicle, Officer Thompson indicated that he was going to pat French down for his own safety. French did not "clearly object" to being touched and patted down as stated by the Plaintiff. He only told Officer Thompson that he didn't like to be touched. In these circumstances, an officer must not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent officer in those circumstances would be warranted in the belief that that his safety or that of others could be in danger. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The scope of the search was confined to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments. *Id.* at 29; *See also Mobley v. City of Birmingham,* 2020 WL 7353338, *8 (S.D. Ala. Nov. 20, 2020) (pat down was reasonable because the officer was alone when he asked the subject to exit his car). There was no violation of French's Fourth Amendment Rights and the claim is due to be dismissed.

Plaintiff further contends that the arrest, handcuffing and tasing of French was illegal. If an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. *Minnesota v. Dickerson*, 508 U.S. 366, 367 (1993). If, while conducting a legitimate *Terry* stop, an officer discovers contraband, he cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. *Michigan v. Long*, 463 U.S. 1032, 1050 (1983).

Officer Thompson had a sufficient legal basis to stop French for failure to use his turn signal. He also had the authority to require French step out of his car for safety purposes. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Officer Thompson, who was alone, patted French down for his own safety. As he did, he felt a bulge in French's pocket and told him to put his hands behind his back. (Doc. 39 - Ex. 1, 10:24:40; Doc. 39 - Ex. 3, 10:34:39). French was never told that he was being placed under arrest. Before Officer Thompson had the chance to either retrieve the item from French's pocket or place French in handcuffs, French knocked Officer Thompson to the ground and fled on foot.

While it is true that in some circumstances a party may be justified in attempting to resist an unlawful arrest, none of those situations are applicable here. Alabama Courts have held that:

> "'The citizen may resist an attempt to arrest him which is simply illegal, to a limited extent, not involving any serious injury to the officer. He is not authorized to slay the officer, except in self-defense; that is, when the force used against him is felonious, as distinguished from forcible. It is better to submit to an unlawful arrest, though made with force, but not with such force as to endanger the life or limb, than to slay the officer.'"

*Ex parte Edwards,* 452 So.2d 503, 505 (Ala. 1983)(quoting *Adams v. State*, 57 So. 591, 592 (Ala. 1912)).  First, there was no attempt on the part of Officer Thompson to arrest French. French was simply instructed to place his hands behind his back. French would not comply with Officer Thompson. Instead, French assaulted Officer Thompson and fled on foot.  When the two eventually became involved in a physical

altercation, French gained control of Officer Thompson's taser and used it against him.

> C.    The Plaintiff's Claim for Excessive Force Under 42 U.S.C. § 1983 is due to be dismissed.

As correctly set out by the Plaintiff in its Response, "[i]n the deadly force context...a police officer may constitutionally use deadly force when the officer (1) 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others' or 'that he has committed a crime involving the infliction or threatened infliction of serious physical harm'; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013). Plaintiff goes on to state that the only crime, if any, that Otis Jr. had committed was the failure to use his turn signal. That is just wrong. At the time that deadly force was used, French had assaulted Officer Thompson, fled from him and taken Officer Thompson's taser. Officer Thompson had probable cause to believe that French posed a threat of serious physical harm. French had not complied with Officer Thompson's orders to "stop resisting" and was in possession of Officer Thompson's taser.

In support of his position that Officer Thompson should be denied qualified immunity as to the claim for excessive force, Plaintiff cites *Jackson v. Sauls*, 206 F.3d 1156 (11th Cir. 2020). In that case, three undercover police officers undertook an investigation of the plaintiffs, four black men who were driving a Pontiac 6000 that was parked at a body shop. *Id.* at 1161. The officers, with weapons drawn and

without identifying themselves, approached the men outside the body shop, cursing at them and telling them to get back inside the shop. *Id.* at 1162. Believing the officers to be armed robbers, one of the shop's employees drew a weapon and shot at Officer Sauls. Sauls returned fire, shooting one of the unarmed plaintiffs. A second officer, Officer Pinckney, also discharged his weapon, shooting and killing a second unarmed plaintiff. *Id.* at 1162-1163. The Court held that both officers were entitled to qualified immunity due to the split-second decisions that had to be made in a tense, uncertain, and rapidly evolving situation, much like the situation that Officer Thompson was confront with in dealing with Otis French, Jr. *Id.* at 1173.

Plaintiff cites *Cantu v. City of Dothan*, 974 F.3d 1217 (11th Cir. 2020) for the proposition that resisting alone is not enough to justify the use of deadly force. In that case, the Court went on to say that the deceased "never threw any punches, never kicked any of the officers, never hit any of them, never tried to get one of their firearms, and never physically or verbally tried to harm them." *Cantu*, 974 F.3d 1217, 1230. (11th Cir. 2020). As further discussed, *infra*, the *Cantu* case is easily distinguishable from the case at bar.

> D.    Plaintiff has not shown that a "clearly established" right existed.

A constitutional right can be "clearly established" in one of three ways. The first is where the relevant federal statute or constitutional provision is specific enough to clearly establish the law that applies to particular conduct and circumstances. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 n. 17 (11th Cir. 2002)(citing *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1150 n. 4 (11th Cir. 1994)(en

banc)). This will occasionally apply even in the absence of judicial application. *Id*. The second way a constitutional right applicable to a specific situation is "clearly established" is when the general constitutional rule identified in decisional law may apply with obvious clarity even when the action in question has not previously been held unlawful. *U.S. v. Lanier*, 520 U.S. 259, 271 (1997)(noting that even though there has been no case law holding welfare officials responsible for selling foster children into slavery, that does not mean that such type of egregious activity would be protected pursuant to qualified immunity until such decision has been issued by the courts). The third option is where the Court looks to precedent tied to the facts of a particular case and those facts are materially similar to the facts confronting the Court in the case being decided. *Vinyard*, 311 F.3d at 1351-52. As a general proposition, "most judicial precedents are tied to particularized facts and fall into this category." *Id.* at 1351.

Plaintiff contends that the force employed by Officer Thompson violated a constitutional right with obvious clarity. To meet this burden, the Plaintiff must show that application of the excessive force standard would lead every reasonable officer in the Defendant's position to conclude the force was unlawful. *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 926-927 (11th Cir. 2000). In support of his position, Plaintiff cites to Eleventh Circuit cases that are not persuasive. In *Perez v. Suszczynski,* 809 F.3d 1213 (11th Cir. 2016), the defendant shot an unarmed suspect who had made no attempt to flee or resist arrest. The suspect was laying compliant and prostrate on his stomach with hands behind his back when he was shot

"execution style" from approximately twelve to eighteen inches away. *Perez*, 809 F.3d at 1219. Here, as shown by video evidence, French resisted being handcuffed, pushed Officer Thompson to the ground, and fled from Officer Thompson. After a brief foot chase, French ran directly at Officer Thompson and knocked him to the ground. At the time deadly force was used, French was armed, non-compliant and involved in a physical altercation with Officer Thompson.

*Fils v. City of Aventura,* 647 F.3d 1272 (11th Cir. 2011), is also distinguishable. In *Fils*, accepting plaintiff's version of events, the plaintiff showed no hostility to the defendants, did not disobey any orders, and did not make any menacing gestures. Assuming those facts, the Court held that no reasonable officer could have believed that it was appropriate to shoot his taser probes into the plaintiff and shock him. *Fils,* 647 F.3d at 1292. Here, French did show hostility toward Officer Thompson, explicitly disobeyed orders that he was given by Officer Thompson, and assaulted Officer Thompson.

Likewise, neither *Vinyard v. Wilson* (holding that that no objectively reasonable police officer could have believed that, after the Plaintiff was under arrest, handcuffed behind her back, secured in the back seat of a patrol car with a protective screen between the officer and the arrestee, an officer could stop the car, grab such arrestee by her hair and arm, bruise her and apply pepper spray to try to stop the intoxicated arrestee from screaming and returning the officer's exchange of obscenities and insults during a short four-mile jail ride) nor *Lee v. Ferraro* (holding that once an arrestee has been fully secured and any danger to the arresting officer

had passed, no reasonable officer could believe that he had the lawful authority to take an arrestee to the back of her car and slam her head against the trunk) are analogous to the present case. *See Vineyard*, 311 F.3d at 1355; *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).

Plaintiff further argues that even if the obvious clarity principle is not satisfied, there are multiple analogous cases with a "close factual fit" to the present case which establish that Officer Thompson's excessive use of force violated the constitution. Plaintiff first discusses *Cantu v. City of Dothan, Alabama*, 974 F.3d 1217 (11th Cir. 2020). In *Cantu*, a struggle occurred between three officers and a subject. The subject evaded the officers and one of the officers struck the subject with a taser. A second struggle occurred and there was disputed evidence as to whether or not, in that struggle, the subject took control of the taser. *Id.* at 1226-27. One of the officers involved then fatally shot the subject. The Court determined that the officer's use of deadly force was unreasonable, and therefore, a violation of the Fourth Amendment. *Id.* at 1230.

*Cantu* is distinguishable from the French case. In reaching its decision, the Court noted, "this is not a case in which the suspect aggressively or violently fought against being arrested." *Id.* at 1230. He "never threw any punches, never kicked any of the officers, never hit any of them, never tried to get one of their firearms, and never physically or verbally threatened to harm them." *Id.* Notably, the Court also determined that in light of the dash camera video recording, a jury could reasonably find that at the time the subject was shot, he did not have contsrol of the taser.

There were also three officers present. So even if the subject had somehow taken the taser and used it on one of the officers and then taken his or her firearm, there was no reason to believe that the subject would not have been shot by one of the other officers. *Id.* at 1231. French, on the other hand, aggressively and violently fought against Officer Thompson. He pushed Officer Thompson to the ground when Thompson tried to place him in handcuffs. He knocked Officer Thompson to the ground a second time after he ran around the house. There is no dispute that French took control of Officer Thompson's taser – it is visible in his hands in the body cam footage. Officer Thompson was also the only officer on the scene. Thus, French posed a threat of serious physical harm or death to Officer Thompson. *See Graham*, 490 U.S. at 396.

Plaintiff next cites to *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009). In *Fiorino*, an officer tased a compliant subject in the abdomen, which took the subject to the ground. *Id.* at 903. Once he was on the ground, the officer did not try to handcuff or move the subject. The subject never got back up and never hit, kicked, punched or threatened the officer. Nonetheless the officer tased the subject an additional seven (7) times over a two-minute period, at one point loading a second cartridge into her taser. *Id.* The Court determined that the need for force was exceedingly limited. The suspect had not acted belligerently or aggressively; he complied with most of the officers' directions; and he made no effort to flee. *Id.* at 908. Again, the situation that Officer Thompson found himself in was much

different. French acted aggressively, did not comply with Officer Thompson's orders and made multiple efforts to flee.

Finally, Plaintiff cites *Plowright v. Miami Dade Cnty*, 102 F.4th 1358 (11th Cir. 2024), where the plaintiff filed a § 1983 action against police officers for excessive force when one of them shot and killed his dog. It was determined that the officer shot an incapacitated, non-threatening domestic animal during a 911 investigation. None of the cases cited are a close factual fit.

As it concerns the stop and seizure of French, Plaintiff argues that the alleged absence of probable cause to initiate the stop violated clearly established law and, thus, both the stop and seizure violated clearly established law. The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 809 (1996). Dash cam footage establishes that French passed Officer Thompson on Shedrick Hardy Parkway. (Doc. 39 - Ex. 1, 10:19:02). Plaintiff admits that French made a right hand turn onto Rain Drive. As seen in the video footage, French's right taillight was not working. (Doc. 39 - Ex. 1, 10:20:12). When Officer Thompson approached French's vehicle, he informed French that he pulled him over for failing to use his turn signal. (Doc. 39 - Ex. 2, 10:21:05-15). In that Officer Thompson observed French violating a traffic law, he had was authorized to make an investigative stop. *Id.*

Plaintiff cites to *Payton v. New York*, 445 U.S. 573 (1980) for the proposition that the "chief evil" against which the Fourth Amendment is directed are

warrantless and nonconsensual searches or seizures unless supported by probable cause. (Doc. 45, p. 14). A review of *Payton*, however, indicates that the Court there held that the "physical entry of a home is the chief evil against which the working of the Fourth Amendment is directed." *Payton*, 455 U.S. at 585. *United States v. Tovar-Rico*, 61 F.3d 1529 (11th Cir. 1995) and *United States v. Tobin*, 923 F.2d 1506 (11th Cir. 1991), which are also cited by the Plaintiff, similarly deal with the warrantless entry of a home.

As set out in Defendants' Amended Motion, because police officers are forced to make split-second judgments in tense, uncertain, and rapidly-evolving situations, the Court is loathe to second-guess decisions made by officers in the field. (Doc. 39, p. 18, citing to *Vaughn v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003)). "[T]hat sort of cool, deliberative Monday-morning-quarterbacking is exactly what qualified immunity protects against." *Donald v. Norris*, 2025 WL No. 796326, *7 (11th Cir. March 13, 2025). Officer Thompson's actions were not unreasonable in light of the circumstances which confronted him during this event.

III.    Plaintiff has not sufficiently alleged a § 1983 Cause of Action Against the City.

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional rights; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289-90 (11th Cir. 2004). As set forth, *supra*, the Plaintiff has failed to establish that French's constitutional rights were violated. Even if French's rights were violated,

17

Plaintiff has failed to identify a custom or policy constituting deliberate indifference which caused any violation.

Plaintiff has alleged that the City has a custom or policy of: (1) refusing to evaluate the constitutionality of police officer conduct; (2) failing to train and supervise its officers on lawful stops, lawful seizures, the constitutional use of force, and how to manage citizens with mental health issues or disabilities; and (3) hiring unfit police officers who will not comply with constitutional requirements.

To allege a "custom or policy," a plaintiff must plead either "(1) an officially promulgated policy or (2) an unofficial custom of practice shown through the repeated acts of a final policymaker for the [defendant]." *Grech v. Clayton Cnty.*, 335 F.3d 1236, 1329 (11th Cir. 2003). Plaintiff has not alleged that there is an officially promulgated policy. Plaintiff must then show that there is an unofficial custom. This custom must be a "widespread practice that…is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Merely alleging that the City has such a widespread practice is not sufficient. *Wade v. City of Miami Beach*, 565 F.Supp.3d 1248, 1251 (11th Cir. 2021). The Plaintiff must allege a pattern which includes specific facts of numerous incidents. *Id.,* citing to *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1230, 1238 (S.D. Fla. 2018). Moreover, the Plaintiff must allege that the final policymaker knows of the custom and failed to stop it. *Brown,* 923 F.2d at 1481. While Plaintiff makes broad allegations of an overarching failure to evaluate, train and hire, he points to no permanent practice. While Plaintiff

alleges Officer Thompson was unfit and should never have been hired, he makes no allegations that the City has hired any other allegedly unfit officer. Neither the Supreme Court nor the Eleventh Circuit has ever applied the single-incident liability exception. *Vielma v. Gruler*, 808 F.Appx. 872, 883 (2020). It should not be applied here.

IV.    **Plaintiff's claims against the City of Bay Minette under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act are due to be dismissed.**

First, Plaintiff failed to allege in his complaint that the deceased was "disabled," which requires a showing that the deceased had a physical or mental impairment "that substantially limits one or more of the major life activities" as required by 42 U.S.C. § 12101(2). Plaintiff argues in his Response that the complaint alleged that the deceased had a "diagnosis of bipolar disorder," and, therefore, Plaintiff met its burden.

That is not enough. A mental disorder must "substantially limit" a "major life activity." The complaint does not even identify the major life activity, nor allege any substantial impairment thereof. Instead, the complaint simply says that the deceased had "bipolar disorder."

Plaintiff seeks refuge under 29 C.F.R. § 1630.2(j)(3)(iii), claiming that subsection establishes that "[b]ipolar disorder is an impairment that substantially limits brain function." *Subsection 1630.2(j)(3)(iii) does not say that*. It does not lift the responsibility from the Plaintiff to allege what major life activity is affected by the diagnoses of bipolar disorder, and how.

Subsection 1630.2(j)(3) is entitled "Predictable assessments," and offers only that – a prediction of what a court may determine. The ensuing subsection (j)(3)(ii) states that "the individualized assessment of some types of impairment will, in virtually all cases, result in a determination of . . . 'actual disability,' and . . . these types of impairments will . . . virtually always be found to impose a substantial limitation on a major life activity." Subsection (j)(3)(iii) then identifies some impairments (like bipolar disorder) where "it should be easily concluded that" they limit a major life activity (like "brain function"). Nothing in this subsection changes the requirement that there be an individualized determination by the court in each case – and Plaintiff here does not even allege in the complaint that the deceased's bipolar disorder substantially limited any major life function at all.

Second, Plaintiff ignores the requirement that one must request a reasonable accommodation. Plaintiff recognizes that he has "the burden of producing evidence of the existence of a reasonable accommodation." *Sheehan v. City and Cnty. Of San Francisco*, 743 F.3d 1211, 1225 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600 (2015). But there is no discussion whatsoever in *Sheehan*, a Ninth Circuit case, about whether the plaintiff there first demanded an accommodation, which is essential to trigger a duty to provide an accommodation. *See Bagwell v. Morgan Cty. Comm'n*, 676 Fed. App. 863, 866 (11th Cir. 2017). It simply was not discussed at all in the decision. And *Sheehan* certainly did not say that in the context of police misconduct cases, a request for accommodation is no longer required as it is in other cases. *Cf. Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 (11th Cir. 2007) (where

the 11th Circuit extensively discussed the deaf plaintiff's actual request for an oral

interpreter as an accommodation during his arrest and transport to jail in an ADA

claim).

V.    The wrongful death claim asserted against the Defendants is due to
be dismissed.

With respect to the wrongful death claim, Defendants stand by their

arguments in their original and Amended Motions to Dismiss, which are supported

by the body camera footage provided to the Court.


s/Melissa P. Hunter
ANDREW J. RUTENS  (RUTEA8549)
arutens@gallowayllp.com
MELISSA P. HUNTER   (HUNTM3367)
mhunter@gallowayllp.com
LAWRENCE M. WETTERMARK
(WETTL2146)
lwettermark@gallowayllp.com


GALLOWAY, WETTERMARK
    & RUTENS, LLP
Post Office Box 16629
Mobile, Alabama  36616-0629
PH: (251)476-4493  -  FX: (251)479-5566
*Attorneys for The City of Bay Minette and
Officer Brandon Thompson*


## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April, 2025, I electronically filed the
foregoing with the Clerk of the Court using the ECF system, which will send
notification of such filing to the following:

Je Yon Jung, Esq.


s/Melissa P. Hunter