# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **OTIS FRENCH, SR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 24-00265-JB-B** |
| | ) | |
| **THE CITY OF BAY MINETTE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on Defendants the City of Bay Minette and Officer Brandon Thompson's Amended Motion to Dismiss and supporting brief (Docs. 38 and 39), Plaintiff's response (Doc. 45), Defendants' reply (Doc. 47) and Plaintiff's Notice of Supplemental Authority (Doc. 50). A motion hearing was held on April 25, 2025, with counsel for both parties present. (*See* Doc. 51). After careful consideration of the relevant filings and arguments and for the reasons stated at the hearing and set out below, Defendants' motion is **DENIED**.

### I.    Factual and Procedural Background[1]

This action is the result of the fatal shooting of Otis French Jr. ("French") by Bay Minette Police Officer Brandon Thompson ("Thompson") on August 20, 2022. The factual allegations leading up to the shotting are stated in chronological order based on the corresponding Constitutional claims as follows:

---

[1] Because this action is before the Court at the motion to dismiss stage, the entirety of the factual allegations is recited from Plaintiff's First Amended Complaint. (Doc. 35).

### A.     Traffic Stop

The First Amended Complaint[2] ("Complaint") alleges that on the date of the incident, Thompson was driving southbound on Shedrick Hardy Parkway and passed French driving northbound.  (*Id*.)  After passing Thompson, French turned right, heading eastbound on Rain Drive, and turned right again, heading southbound on Lower Street.  After passing French, Thompson continued driving southbound for approximately eleven seconds, abruptly made a U-turn, accelerated, then turned onto Rain Drive, heading eastbound.  Once on Rain Drive, Thompson passed a pick-up truck in front of him to the left at which point he activated his lights. Thompson turned right again, heading southbound on Lower Street. French immediately pulled over and turned left into the driveway of 1203 Lower Street. Thompson called in French's license plate number while pulling up and parking behind French's vehicle.  Thompson then stepped out of his patrol vehicle, approached the passenger side of French's car, opened the passenger door, and asked French for his driver's license.

French asked Thompson "what's the issue?"  and Thompson replied, "you didn't use your signal back there and I see why now [inaudible] you have a light out on that left side." Thompson informed French it was "no big deal, not something I am going to write a ticket on."  Thompson asked French where he was headed, and he responded he was headed home. Thompson, informed French that he was going to issue a warning and let him go and that he needed to "get that left taillight fixed."

---

[2] The First Amended Complaint is the operative Complaint.

After French gave Thompson his license, Thompson returned to his vehicle, ran a vehicle and license check, received information from dispatch that the license and registration were valid with no warrants, and proceeded to print a warning citation.

According to the Complaint, Thompson had no basis for initiating a traffic stop of French because (1) when Thompson encountered French initially, French was driving cautiously, obeying the speed limit, maintaining his lane, and adhering to all traffic laws and regulations on Shedrick Hardy Parkway, (2) by the time Thompson turned around, eleven seconds had elapsed such that Thompson could not observe French driving on Rain Drive or turning right on Lower Street, (3) once Thompson was again able to observe French on Lower Street, French continued to drive cautiously, obey the speed limit, maintain his lane, and adhere to all traffic laws and regulations (4) Thompson indicated a failure to use a turn signal due to a non-functioning left taillight as the basis for the stop, (5) French did not make any left turns prior to Thompson activating his emergency lights, and (6) French's only left turn occurred approximately 25 seconds after Thompson activated his emergency lights.

**B.    The Seizure**

Thompson returned to French's vehicle with the warning citation in hand, this time approaching on the driver's side. Thompson then ordered French out of his vehicle. After opening the door to exit the vehicle, Thompson asked if French had any weapons on him, and French responded "no." French exited his vehicle.

According to the Complaint, Thompson had no basis to order French out of his vehicle, because (1) Thompson had already verified through dispatch that French's license and registration were valid with no outstanding warrants (2) Thompson had already printed and

prepared the warning citation regarding the purported turn signal violation, (3) Thompson had

no legitimate law enforcement purpose for demanding French to exit his vehicle, (4) the purpose

of the traffic stop was complete once Thompson returned to French's vehicle with the warning

citation, and (5) Thompson had no justification for extending the duration of the stop beyond the

purpose of the stop.

### C.    The Pat Down

After ordering French to exit his vehicle, Thompson ordered French to turn around for a

pat down four times. French pleaded that he was not comfortable with "people" touching him.

Thompson repeatedly insisted that French turn around and be subject to a pat down.  French

turned around to face the car and Thompson initiated a pat down by touching French's left pocket.

According to the Complaint, Thompson had no basis for ordering French to submit to a

pat down because (1) Thompson admitted that he had no reasonable articulable suspicion that

French had any weapons, (2) The initial stop was based solely on an alleged turn signal violation,

(3) French's behavior during the entire encounter had been compliant and non-threatening,

including immediately putting his hands in the air when ordered to submit to the pat down, (4)

French had provided valid license and registration documentation when requested, (5), the

warning citation for the turn signal violation provided no basis for expanding the stop to include

a search of French's person, and (6) no circumstances existed during the stop to support a

reasonable belief that French was armed or dangerous.

### D.    The Handcuffing

After subjecting French to a pat down, Thompson pulled out his handcuffs and ordered French to put his hands behind his back.  Thompson pushed French against his vehicle. Thompson threatened to tase French if he did not put his hands behind his back.

According to the Complaint, Thompson had no legal basis for handcuffing French or using force against him because (1) The initial pat down of French was itself conducted without legal justification, (2) Thompson's decision to handcuff French stemmed solely from his claim of feeling something like a rock in French's pocket during the pat down, (3) no weapons or contraband were ultimately recovered from French's person or vehicle or the scene, (4) Thompson unduly escalated the encounter by pushing French against his vehicle without any showing of resistance or threatening behavior, (5) Thompson unduly escalated the situation by threatening to deploy his taser against French when French expressed reluctance to be handcuffed, and (6) the entire sequence of events arose from what began as a purported traffic stop regarding a taillight, and what should have resulted in only a warning citation for a turn signal violation.

### E.    The Use of Excessive and Deadly Force

After Thompson's display of handcuffs, French ran away from Thompson towards the backyard via the south or right side of the home at which he had been stopped. Thompson then ran towards the north or left side of the house to cut French off.  French ducked and attempted to run past and away from Thompson, but Thompson stepped in French's path, tased, and tackled French, causing French to hit his head on a nearby picnic table. Thompson continued to use his taser in stun mode against French and threatened French as follows: "I'm gonna kill you!"  After Thompson threatened French, Thompson distanced himself several feet away from French and

discharged his firearm against French multiple times, approximately seven (7) times, with five (5) of the bullets hitting French's body. French was pronounced dead at the scene, or shortly thereafter. No weapons were recovered from the scene, the vehicle, or French's person. No drugs were recovered from the scene, the vehicle, or French's person.

According to the Complaint, Thompson had no legal basis for using deadly force against French because (1) the entire encounter stemmed from, at most, an alleged traffic violation that had already resulted in only a warning citation, (2) French was merely attempting to distance himself from Thompson's escalating and unlawful uses of force, (3) Thompson deliberately escalated the situation by running to the opposite side of the house to cut off French's path of retreat, (4) French attempted to duck and run past Thompson but Thompson discharged his taser leads against French without any threat of serious physical harm to Thompson or others, (5) after the taser deployment and tackling French, Thompson threatened "I'm gonna kill you" before creating distance and firing his weapon, (6) Thompson shot French multiple times from several feet away while Thompson was in an upright position, (7) Thompson had observed no weapons or contraband on French's person or in his vehicle that could have justified the use of deadly force, and (8) Thompson had multiple opportunities to de-escalate the situation rather than resort to deadly force.

Based on the above events, French has asserted the following causes of action against Thompson in his individual capacity:

> Count I- Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983 for illegal stop
>
> Count II- Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983 for illegal seizure from vehicle

Count III- Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983 for illegal seizure based on pat down

Count IV- Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983 for illegal seizure and arrest based on handcuffing

Count V- Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983 for use of deadly force.

Plaintiff has additionally stated causes of action against the City of Bay Minette pursuant to violations of the Constitution pursuant 42 U.S.C. § 1983 (Count VI), the Americans with Disabilities Act (Count VII), Section 504 of the Rehabilitations Act (Count VIII), and state law claims against the City and Thompson for wrongful death (Counts IX and X).[3]

This Court held a hearing on April 25, 2024, and orally denied Defendants' motion in its entirety. (*See* Doc. 51). However, the Court recognizes appeal may be sought based on the denial of qualified immunity. *See Dalrymple v. Reno*, 334 F.3d 991 (11th Cir. 2003) ("We have jurisdiction to review the denial of the defense of qualified immunity on interlocutory appeal pursuant to 28 U.S.C. § 1291") citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Defendants have indicated to this Court that they plan to seek appeal. Because dismissal based on qualified immunity is the only appealable issue at this stage, this written order is limited to dismissal of Counts I through V.

---

[3] Although not specifically discussed at the hearing, to the extent Defendants wish to seek review of the denial of state-agent immunity, the Court notes that Defendants' arguments with respect to the wrongful death claim against Thompson again relies solely on the video footage which is not being considered for the reasons discussed below. As a result, like the conclusion that dismissal is not warranted based on the allegations of the Complaint with respect to the alleged Constitutional violations, dismissal is also not warranted as to the wrongful death claim because the Complaint sets forth facts alleging Thompson's actions except him to entitlement to state-agent immunity. *See Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000).

## II.    Standard of Review

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted). The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id.* at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* at 556. "The Supreme Court's *Twombly* formulation of the pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Williams v. Henry*, 2009 WL 3340465, at *2 (S.D. Ala. Oct. 15, 2009) (citations and internal quotations omitted). "A district court may properly dismiss a

complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.' " *Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016), cert. denied sub nom. *Magwood v. Jones*, 137 S. Ct. 675 (2017) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

### III.    Incorporation-by-Reference Doctrine

In addition to the facts alleged in the Complaint, here, video footage exists on which Defendants rely to seek dismissal.  The parties, however, dispute whether the body camera video of Officer Thompson and dash camera video from Officer's Thompson's vehicle ("videos"), which show the relevant events of August 20, 2022, should be considered by this Court in ruling on Defendants' motion to dismiss.  (Docs. 39 and 45).  Because Defendants rely solely on the subject videos to seek dismissal, it is imperative to properly consider the application of the incorporation-by-reference doctrine before reaching the merits of Defendants' motion.

The Eleventh Circuit has recently clarified that:

> when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.

*Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  In this case, the parties agree that the video is central to the action.  As a result, the Court must only determine whether the videos are undisputed, *i.e.*, unchallenged.

According to Defendants, the dash camera and body camera footage should be considered because it is "well-lit," "presents both visual and audio depictions of the events that transpired," and "the viewer has a good angle of the events with limited visual obstructions," all factors relied

upon in *Baker v. City of Madison*, 67 F.4th 1268, 1277 (11th Cir. 2023), to determine that footage should be considered.  Defendants, however, recognize, that unlike *Baker*, the relevant videos here, are missing approximately twelve (12) seconds of footage at the moment when Plaintiff and Officer Thompson collide.  (*Id*. at n.1).

According to Plaintiff, the video should not be considered.  (Doc. 45, generally).  More specifically, Plaintiff points out that since the onset of this litigation, concerns have been raised about potential spoliation of evidence regarding the videos, as there is no dispute that at least twelve seconds are missing of the body camera footage.  In that respect, this Court has previously granted Plaintiff an opportunity to review and analyze the metadata of the videos before considering Defendants' motion to dismiss.  The imposed time to access the metadata has passed and Defendants have filed the instant renewed motion, but it remains that additional forensic analysis is ongoing.  Plaintiff also points out that the footage most recently produced differs from footage previously shown to counsel. (*Id*.).  As a result, Plaintiff argues that *Johnson* criteria have not been met for two reasons: (1) the video is disputed because its authenticity has been challenged, and (2) critical portions of the video are missing.  (*Id*.)

There is no question that the incorporation-by reference doctrine applies to body camera footage.  *Baker*, at 1277.  The Eleventh Circuit in *Baker* and *Johnson*, determined that the criteria of incorporation-by-reference doctrine were "easily" met. *See Johnson*, at 1300-01; *Baker,* at 1277.  In reaching that conclusion in *Baker*, the Eleventh Circuit noted that the video was mentioned in the complaint several times, depicted events central to the plaintiff's claims, was clear because the events took place in broad daylight, contained video and audio of the events, and captured a good angle of the events with no visual obstructions.  *Baker*, at 1277.  Similarly, in

J*ohnson*, the Court determined the requirements of the incorporation-by-reference doctrine were met because the footage "clearly depict[ed] the events that are central to [plaintiff's] claim", were complete, and even those moments where the lens was blocked on the officer's body cam, were captured by the dashcam. *Johnson*, at 1301. Finally, in both cases, the authenticity of the videos was not challenged by the Plaintiff. *Johnson* at 1301; *Baker* at 1277.

First and foremost, this action is distinguishable from *Johnson* and *Baker*, because there is no question that Plaintiff has challenged the authenticity of the videos in this action. In that regard, there is no dispute that at a critical point the body camera video of Thompson goes out for unknown reasons.[4] As a result, Plaintiff is currently working to complete a metadata analysis of the video. Because the challenge to the authenticity of the video alone, prevents the *Johnson* criteria from being met, this Court is not persuaded to consider the video footage for purposes of the instant motion. Nevertheless, because this Court has also considered the totality of the videos in reaching its conclusion, it will address the other factors considered in *Baker* and *Johnson*, which further dissuade application of the incorporation by reference doctrine to this case at this stage.

In addition to the unexplained "gap" in the body camera footage, the videos here are also lacking details relating to key moments between French and Thompson. For example, Plaintiff has asserted a Constitutional violation occurred based on the initial traffic stop of French. With respect to that claim, there is a factual dispute over whether Officer Thompson observed a traffic violation prior to the stop. The dash cam video, because it faces forward, does not depict the

---

[4] On this point, Defendants suggest the gap is twelve or maybe fifteen seconds based on their effort to play the body camera footage and dash cam audio footage at the same. Regardless, this amount is an estimate.

violation which Officer Thompson allegedly saw. Defendants have surmised this fact to be inconsequential. They posit that Thompson mistakenly referred to the left light instead of the right, or that he was perhaps facing the front of the vehicle, or that he was looking in his rearview mirror. (*See* Doc. 47). Whatever extrapolation Defendants ask this Court to make, it remains that the video does not depict, much less, clearly depict the facts relevant to the initial stop so as to discredit the events alleged in the Complaint. When a video contains ambiguities, "courts must construe all ambiguities in the video footage in favor of the plaintiff, as they must, at this stage, construe all ambiguities in the written pleadings in the plaintiff's favor." *Baker*, 67 F.4th at 1277 citing to *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010).

In addition, regardless of the reason for the "gap" in the footage, it remains that the video is incomplete because the gap exists. There is no dispute that the video stops playing at a very critical time, just before Thompson's use of deadly force. As a result, the missing footage is relevant to Plaintiff's use of excessive and/or deadly force claim and the incomplete video cannot overcome the allegations of Plaintiff's Complaint at this stage.

Finally, in addition to key moments not being recorded by the cameras at all, the videos are also incomplete because they are, at times, obscured during critical moments of the altercation between French and Thompson. In the absence of clarity, the Court cannot say that the non-obscured portions clearly contradict Plaintiff's factual allegations in the Complaint.

Because Plaintiff has challenged the authenticity of the body camera footage and because the videos here are not complete and/or clear, the Court is not satisfied that the criteria for incorporation-by-reference doctrine have been met. In sum, during the events between Thompson and French, Plaintiff's vehicle is outside of the dash camera's view, Plaintiff is beyond

the view of the body camera, audio is difficult to discern, and at least twelve seconds of time is completely missing, for unknown reasons.  As such, the Court will not consider it for purposes of ruling on Defendants' motion.

## IV.    Qualified Immunity

According to Defendants, all § 1983 claims against Thompson are due to be dismissed because the Plaintiff cannot establish that Thompson violated a clearly established constitutional right.  (Doc. 39 at 10).

"Qualified immunity is an affirmative defense to a § 1983 action against a government official sued in his or her individual capacity." *Adams v. Franklin*, 111 F.Supp.2d 1255 (N.D. Ala. July 31, 2000) (citations omitted). To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). To determine whether an official claiming qualified immunity was performing a discretionary duty, the court must consider: (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. *Id*. at 1282. If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To meet his burden, a plaintiff must first show that a defendant's conduct violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Second, a plaintiff must show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "For an asserted right to be clearly established for purposes of qualified

immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.'" *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000) (citations omitted). "Additionally, the standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs." *Id*. at 1165.

### A.    Constitutional Violations (Counts I through IV)

For each of Plaintiff's Constitutional claims (Counts 1 through IV), Defendants argue Thompson is entitled to qualified immunity based on the video footage attached to their motion. (*See* Doc. 39).   Specifically, Defendants contend that videos negate Plaintiff's ability to establish a Constitutional violation occurred, which is his burden for the purpose of the qualified immunity analysis.   In response, Plaintiff has pointed to the Complaint to show Constitutional violations have been alleged, defeating dismissal of Plaintiff's claims against Thompson based on qualified immunity at this stage.  (*See* Doc. 45).

For the reasons addressed herein above, the Court has determined the videos should not be considered.  As a result, the only facts to be considered are those alleged in the Complaint. However, Defendants have not articulated any arguments, which the Court could consider as a basis for 12(b)(6) dismissal based on the factual allegations of the Complaint.[5]  With no such

---

[5]  Defendants have *made the statement* that Thompson is entitled to qualified immunity, absent consideration of the video. Defendants' statement, however, is not supported by any analysis based on the facts alleged in the Complaint. Defendants alternatively argue that Plaintiff's complaint should be dismissed because it improperly states conclusions of law which should not be accepted to defeat dismissal.  (Doc. 51 at 10).  This position, however, is never discussed as to Counts 1-4.  (*See Id*. 10-12) and instead are aimed at Counts V-IX.

arguments presented, this Court cannot determine Thompson is entitled to qualified immunity at this stage.  Accordingly, dismissal is not warranted.

### CONCLUSION

After careful consideration of the relevant filings and arguments and for the reasons stated at the hearing and set out above, Defendants' motion is **DENIED**.

**DONE and ORDERED** this 30th day of June, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE